## JOHNSON *v.* PECK.

### Opinion delivered March 17, 1894.

1. *Contribution between partners—Accounting—Burden of proof.*

   The firm of J., G. & Co., of which J. and G. were members, was dissolved in 1854. J. undertook to pay the firm's debts with assets of the firm in his hands, the amount of which does not appear. G. died in 1868, and J. in 1870. Prior to July, 1869, J. had settled the outstanding partnership debts, except a judgment which was compromised and paid in 1886 by his administratrix. It was not shown that any demand was ever made of J., or of his administratrix, for an accounting of firm assets in his hands, or that there were such assets still undisbursed. In a subsequent suit by J.'s administratrix to enforce contribution from G.'s heir of G.'s proportion of the judgment paid by J.'s estate, *held*, that, after the lapse of so much time, the burden was on defendant to show that J.'s estate, which paid the judgment, had partnership assets not disbursed in settlement of partnership debts.

2. *Enforcement of judgment against decedent's land—Laches.*

   Delay of thirteen years in enforcing a judgment against the estate of a decedent will bar its enforcement as to lands of the estate subsequently purchased by another from decedent's heir for value and without notice of such judgment.

Appeal from Sebastian Circuit Court in Chancery, Fort Smith District.

C. J. FREDERICK, Special Judge.

STATEMENT BY THE COURT.

This suit was commenced November 9th, 1886, by complaint in equity in the Sebastian circuit court, by the appellants, the widow and administratrix of Chas. B. Johnson, and his heirs at law, to obtain a decree for contribution against Lizzie Grimes, only heir of Marshall Grimes, deceased.

Charles B. Johnson, Marshall Grimes and C. Adolphus Meyer were partners at Fort Smith, in 1852, in the mercantile business, and failed in 1854, and, for

aught that appears, went out of business, and the partnership seems to have been thereby dissolved, except as to the unsettled partnership business, though it does not appear that there was any formal dissolution of the partnership.  C. Adolphus Meyer moved away, became and remained insolvent.  Charles B. Johnson undertook to compromise and settle the indebtedness of the firm, nearly if not quite all of which he settled before his death, except a judgment in favor of the estate of Marcellus Duval, which was probated on the 22nd day of September, 1871, against the estate of Marshall Grimes, deceased, in Sebastian county, Arkansas, and which judgment Margaret A. Johnson was compelled to pay as administratrix of the estate of Charles B. Johnson, deceased.  To compel contribution from the estate of Marshall Grimes of one half of the amount so paid, this suit is prosecuted.

After going out of the mercantile business at Fort Smith, Johnson and Grimes, who were brothers-in-law, were associated together in filling contracts to feed the Indians, under the government of the United States, and afterwards under the government of the Confederate States.

Sometime after the close of the war between the States, Johnson and Grimes entered into partnership with J. C. D. Blackburn, at Sherman, Texas, to carry on a mercantile business in connection with government contracts to feed the Indians.  Grimes died January 2nd, 1868, and soon after his death Johnson arranged to carry on the business with Blackburn till 1870.  By arrangement between Johnson and Blackburn, Johnson was to represent and manage Grimes' interest in the firm of J. C. D. Blackburn & Co.  Johnson administered upon Grimes' estate in Texas, November 30th, 1868, and filed an inventory of Grimes' personal property, consisting of about $390 in value of personal chattels and

"one account on J. C. D. Blackburn & Co., the definite amount not ascertained, supposed to be $5000." Johnson took no further steps in this administration. On January 7th, 1870, he was appointed administrator of Grimes' estate in Arkansas by the probate court of Sebastian county, but took no steps therein, and died on the 20th of January, 1870.

Margaret A. Johnson, one of the appellants, administered upon his estate, and filed an inventory showing lands in Texas and Arkansas of considerable value, bonds of the nominal value of $50,000, and, among others, the following item: "Half interest in the late mercantile firm of Blackburn & Co. composed of deceased and J. C. D. Blackburn. Account stated between administratrix of deceased and surviving partner; balance to be coming to deceased's estate $12,688, to secure the payment of which said Blackburn executed to administratrix four several promissory notes, each for the payment of $3172, dated April 26th, 1870, and payable, respectively, in three, six, nine and twelve months after date." Of this amount it appears Mrs. Johnson, as administratrix, collected only $3170, but never received the other.

Defendant also offered to prove that, on May 15, 1875, Lizzie Grimes obtained judgment, by probate of a claim, for $5900, with eight per cent. per annum interest from that date, in the county court of Grayson county, Texas, against the estate of Johnson, that certain lands of Johnson in Texas had been sold and credited on same, and that the balance due on the judgment is over $10,-000—being $8,505.28, on March 19, 1888, by the statement of the adminstrator; but the court excluded the evidence, and the defendant excepted.

Mrs. Johnson testified that she "had nothing to do with Grimes' interest;" that when she sold Johnson's interest to Blackburn, there was no statement made to

her of Grimes' interest; that all she "had anything to do with was with Mr. Johnson's interest."

The appllees in their answer alleged, in substance, that, at the time Johnson agreed to compromise and settle the debts of the firm of Johnson, Grimes & Co., he had in his hands all of the joint and copartnership funds of himself and Grimes, which he expected to use for that purpose; "that the amount of said funds held by him was largely in excess of the debts, and that the amount due said Grimes in excess of a sum sufficient to pay said debts amounted to $40,000;" that, as administrator of the estate of Grimes in Texas, "he came into possession of other property of Grimes; that none of said joint funds so held by Johnson ever came to the defendant." They deny that there had been any settlement of the partnership affairs of Johnson and Grimes, or that lapse of time had barred a settlement of the same. They charge that all Grimes' interest held by Johnson at his death went into the hands of Margaret A. Johnson, as administratrix.

The lands of Grimes' estate were attached upon the institution of the suit, and Nicholas Gacking filed an interplea, showing that he had purchased of John Carnall, as agent of Lizzie Grimes, forty acres of the land, before the payment by Mrs. Johnson of the Duval judgment, but after the same had been probated against the estate of Grimes. And it is contended that he took it subject to the payment of the debts of Grimes' estate; that he was bound to take notice of the course of business in the probate court, and was not an innocent purchaser; that the creditors of Grimes' estate had a lien upon the lands of the estate for the payment of their debts; that he took the land, as Lizzie Grimes took it, charged with the debts against her father's estate; that Gacking could stand in no better attitude than she did when she conveyed the land to him.

There were other questions raised by objections to testimony, and to the introduction of copies of records from Texas, which we do not here consider.

The court dismissed the complaint, on the grounds, as we understand, that partnership assets went into Johnson's hands, if not from the partnership of Johnson, Grimes & Co., from the partnership of J. C. D. Blackburn & Co. in Texas, and that it is not shown that there was ever any settlement of partnership accounts between Johnson and Grimes.

To reverse the decree the cause is here on appeal.

*John H. Rogers* for appellant.   *J. L. Hendrick* of counsel.

1.   The evidence does not support the findings of fact.   The evidence fails to show that Johnson had enough of Grimes' property to pay his share of the firm debts, and the burden was on appellee to show this. Mansf. Dig. sec. 5072.   Blackburn as surviving partner had the sole right to wind up the partnership of Blackburn & Co., in Texas.  2 Bates, Part. sec. 715 and cases cited in notes 2 and 3;  *ib.* sec. 714 and notes ; 38 Oh. St. 357; 45 Ark. 299.   The probate of the claim against Johnson's estate in Texas, was a nullity, so far as these plaintiffs are concerned.  29 Ark 437–8 ; 16 *id.* 258 ; 34 *id.* 132;  6 How. (U. S.) 44 ; 18 *id.* 16; Story, Confl. Laws, secs. 513 to 518 and notes, etc.; 1 Woerner on Adm. sec. 158 ; 54 Ark. 33.   At Johnson's death, he ceased, *as administrator of Grimes*, to be a trustee.   39 Ark. 557.   See also 14 Ark. 254; 53 Am. Dec. 711 and note.   At Johnson's death the estate of Grimes had no claim which could be probated against Johnson's estate, but if it did, it is a stale claim now, and barred by nonclaim.   39 Ark. 578; 18 *id.* 334 ; 33 *id.* 658 ; 113 U. S. 449.

2.   Even if the proof showed that Johnson at his

death had property belonging to Grimes not accounted for, still, after the long lapse of time and the intervention of the statute of non-claim, it could not avail defendant. 19 Ark. 329 ; 23 *id*. 604 ; 14 *id*. 252 ; 143 U. S. 224 ; 55 *id*. 93 ; 17 Fed. Rep. 36 ; 51 *id*. 487. On this principle it will be presumed that the old firms have long since been closed and settled. 3 Johns. Ch. 578 ; 1 Edw. Ch. 343 ; 14 Ark. 62. The right to a settlement of any of these partnerships is long since barred. 1 Edw. Ch. 343 ; *ib*. 417 ; 2 *id*. 636 ; 1 Johns. Ch. 46 ; 2 *id*. 193. While it is true that there can be no contribution between partners while the partnership matters remain *unsettled*, yet the law will presume, in the absence of proof, that the old firm of Johnson, Grimes & Co. has long since been settled. 2 Johns. Ch. 394.

3. A summons was not necessary a warning order is sufficient. 36 Ark. 217 ; 31 *id*. 493. The effect of Carnall's power of attorney is decided in 5 Pet. Cond. U. S. Rep. top p. 401 ; 8 Wheat. 174. His deed was executed after the attachment was levied. 41 Ark. 371. When Mrs. Johnson paid off the Duval judgment she as administratrix, was subrogated in equity to all the rights and lien of the judgment creditor for contribution. 40 Ark. 433 ; 45 Miss. 183 ; Bisph. Eq. secs. 27, 335 ; 2 Wait, Act. and Def. p. 299. If Grimes' estate had been closed, she could pursue the assets in the hands of the heir. 48 Ark. 237. See also 40 Ark. 103 and 433. Meyer, one of the parties, was dead and insolvent, and Miss Grimes was liable for one half the debt. 44 Ark. 359 ; 27 Mo. 501 ; 20 Am. Dec. 562 and note.

*Winchester & Bryant* for appelles.

1. Contribution is not an absolute but an equitable right, and will not be allowed if ineqitable. 62 Am. Dec. 747 ; 59 *Id*. 631 ; *Id*. 283 ; 2 Wait, Ac. & Def. 288, 291, 295–9, 300. As between partners, it is *never* allowed until there has been a final account and balance struck.

2 Lindley on Part. p. 941, sec. 567, n. 100 ; 2 Bates, Law of Part. 849 *et seq* 851–2, 859 ; 2 Wait, Ac. & Def. 300. The evidence shows that no final accounting or settlement of the partnerships of Johnson & Grimes, or Johnson, Grimes & Co., has ever been had, and the burden is on the plaintiffs. Hempst. (U. S.) 560 ; 88 Am. Dec. 667 ; 6 Ark. 191, 23 *id.* 333 ; 9 *id.* 518. The dissolution of a firm does not affect a settlement, nor does a failure or insolvency necessarily dissolve a firm or settle the accounts between the members. 27 Am. Dec. 618 ; 135 U. S. 621 ; 48 Am. Dec. 546 ; 40 *id.* 497 ; 38 *id.* 768 ; 53 *id.* 711. See also 137 Mass. 510 ; 31 Ala. 230 ; 90 N. Y. 580 ; 10 Gray, 405. On the question of time as having settled the firm affairs, see 135 U. S. 621, 628.

2. Johnson had joint funds or property in his hands, of Grimes and himself, which should have been applied to the Duval debt, and it would be inequitable to enforce contribution without an accounting. 5 Dana, 384 ; 13 Mo. 470 ; 6 B. Mon. 236 ; 62 Am. Dec. 747 ; 43 *id.* 382. The evidence shows that Johnson had such joint funds. 13 Mo. 470 ; 53 Am. Dec. 711 ; 48 *id.* 546 ; 38 *id.* 768 ; 27 *id.* 618.

3. The defense is not barred by non-claim or lapse of time. 10 Am. St. Rep. 646 ; 5 Dana, 389 ; 55 Conn. 419 ; 9 N. J. Eq. 44 ; 12 La. An. 297 ; 9 Ga. 398 ; 8 B. Mon. 580 ; 8 Rich. 113 ; Wood on Lim. 602–3 ; 22 Ark. 375 ; 63 Iowa, 477 ; 68 *id.* 633 ; 36 Ohio St. 153 ; 26 Miss. 302. Matters in defense purely are never barred in equity.

4. As to the Gacking interplea, he bought and paid the consideration long before this suit. The lien of the Duval judgment is barred. 37 Ark. 155 ; Mansf. Dig. sec. 4487.

HUGHES, J. (after stating the facts). The complaint in this case alleges in substance that the partnership accounts of Johnson, Grimes & Co. were fully set-

tled, and the partnership dissolved, many years before the institution of this suit, and that the judgment in favor of Marcellus Duval, paid by Mrs. Johnson, was the only remaining unsettled matter of that partnership, and that that judgment was paid out of assets of Johnson's estate ; and prays for contribution from the estate of Grimes, the only partner of the firm save Johnson who, or whose estate, was solvent. It does not pray for a settlement of partnership accounts.

The answer denies that the partnership accounts of this firm were ever settled, and avers, in substance, that Johnson had a large balance in his hands, at his death, belonging to the firm, which went into the hands of his administratrix, none of which ever came to the hands of Lizzie Grimes, the only heir of Marshall Grimes, deceased, and that this amount was more than enough to have settled Grimes' share of the Duval judgment, and that the administratrix and heirs of Johnson are not entitled to contribution ; that, before it could be had, there must be a settlement of the partnership accounts, and a balance between Johnson's estate and Grimes' estate struck, when, if the balance is in favor of Johnson's estate, he might be entitled to contribution. No affirmative relief is asked in the answer.

It is a general rule that one partner cannot recover, either in a suit at law or in equity, for contribution for advances or loans made by him to the firm nor for money paid or debts settled by him for the firm out of his private estate, apart from a general accounting and settlement. 2 Bates, Part. secs. 849, 851, 852, 859 ; 2 Lindley, Part. p. * 567; *Bailey* v. *Starke*, 6 Ark. 192 ; *Houston* v. *Brown*, 23 Ark. 333.

1. Right of contribution among partners.

In *Lang* v. *Oppenheim*, 96 Ind. 47, a paragraph in a complaint for contribution, filed after dissolution of the partnership, was held insufficient because it did not state that there were no partnership assets in the hands of the

plaintiff, or that there had been a final settlement of
partnership accounts, and that there was nothing due to
the firm from plaintiff, which ought to go in satisfaction
of the debt paid by plaintiff for the firm, and on account
of which he claimed contribution. In *Houston* v. *Brown*,
23 Ark. 333, it was held that "an action would not lie
upon an instrument of writing acknowledging the re-
ceipt of money by the defendant of the plaintiff, speci-
fying its payment on account of a partnership concern,
unless the plaintiff prove that there was not an existing
or unsettled partnership." So it seems, according to
those cases, that, before a plaintiff can have contribution
on account of a partnership debt paid by him, he must
show that there is not an existing or unsettled partner-
ship. The complaint alleged that the partnership of
Johnson, Grimes & Co. was dissolved in 1854 ; that
Johnson died in January, 1870; and the proof is that the
firm went out of busines in 1854, and tends to show that
the partnership was then dissolved, except for the pur-
pose of settling the partnership business. Grimes died
in 1868. Johnson died in January, 1870. On the 26th
of March, 1886, Mrs. Johnson, as administratrix of
Chas. B. Johnson, with the consent of his heirs, com-
promised the Duval judgment and satisfied it by pay-
ment of $10,487.45, and, after requesting Lizzie Grimes
to pay one half the amount, brought her suit for contri-
bution, in which the heirs of Johnson joined on Novem-
ber 9th, 1886, Miss Grimes having refused to contribute.
Miss Grimes having died, the suit was revived against
her administratrix.

Did it devolve upon the appellants to prove that
there were not unsettled partnership accounts, between
Johnson and Grimes, as members of the firm of Johnson,
Grimes & Co., which went out of business in 1854, more
than thirty years before the payment of the Duval judg-
ment by Johnson's administratrix and heirs, more than

fourteen years before Grimes' death, and about sixteen years before Johnson's death?

In *Brown* v. *Agnew*, 6 Watts & S. 238, it is held that "if, however, the partnership has been dissolved, and the partnership accounts have been adjusted, and one partner is afterwards obliged to pay an outstanding claim unprovided for, the action of assumpsit would seem to be the proper remedy to recover the proportion of it which the defendant ought to pay by reason of the joint liability. A contract on his part to do so would arise from the fact of payment, as money paid to his use for his proportion, and on ordinary principles the action would lie for contribution. The transaction would then come within the class which are termed insulated or cut off from the general partnership concerns, and would be the payment by a mere joint contractor on the common account.  *  *  In the present case the payment was made in 1840,  *  *  *  more than six years having elapsed from the dissolution till the payment of the claim and institution of this suit. These circumstances, we think, raise a fair presumption that the partnership accounts had been settled or terminated in some way, till it is overthrown by some evidence on the part of the defendant that the general partnership accounts yet continued open and current. This burden lies on him who seeks to avoid the plea of the statute of limitations to an action of account render or assumpsit.  *  *  *  By analogy, therefore, after the lapse of six years it lies on the party setting up an account to aver and prove that it remains open and current; and as the defendant here relies on the existence of unsettled accounts to defeat this action, the burden of making it out is thrown on him; and not having done so, there is no ground to defeat the action of assumpsit."

"Laches and neglect are always to be discountenanced in equity. A party must not sleep upon his

rights here, any more than at law. He must use all reasonable diligence to assert his claim, or the court will not help him. This principle is found in a great variety of cases; * * * * and it is more particularly applicable to stale demands, brought forward and attempted to be supported for the first time after the death of the original party to the transaction." *Powell* v. *Murray*, 2 Edward's Ch. 644. "Calling for accounts is not to be encouraged, after the death of the accounting party, provided he lived long enough to have accounted, and there was no impediment." *Bertine* v. *Varian*, 1 Edward's Ch. 343.

It is not claimed that there was ignorance of his rights upon the part of Grimes in his life-time, or of his heir, Lizzie Grimes, after his death ; and if Johnson had the large amount of assets in his hands that it is charged in the answer here he did have, he could have been called to account by Grimes before his death, or by his administratrix or heir after the death of Grimes. No reason is assigned why it was not done. Nor was there, in our opinion, any evidence sufficient to show that Johnson had in his hands or possession at the time of his death, or that his administratrix or heirs received, any effects of Grimes, or of Johnson, Grimes & Co., not disbursed in the settlement of the firm debts or accounted for.

After the 27th day of July, 1869, by which time, according to the evidence of the Hon. Jesse Turner, Johnson had compromised and settled all the claims in his hands against the firms of Johnson & Grimes, and Johnson, Grimes & Co., it is not shown that there were any outstanding unsettled claims against the firm of Johnson, Grimes & Co., or Johnson & Grimes, except the Duval debt, nor is it shown any where that, after that date, Johnson paid, or promised to pay, anything on account of Johnson & Grimes or Johnson, Grimes & Co. to any one, or that he made any promise, or ac-

knowledged any obligation, to make any payment, or to account, except that it is shown that he afterwards sought to compromise the Duval judgment, which his administratrix and heirs did compromise and settle after his death. Here is a period of over sixteen years, when there is nothing to show an acknowledgment, either expressly or by implication, of accountability.

It cannot fairly be presumed, after the lapse of so great a length of time, that Johnson had in his possession assets of the partnership not disbursed in settlement of the debts or accounted for in some way. What he had in his hands originally for the purpose of settling their debts does not appear from the evidence. If we were to support the appellees' contention that it must be presumed he had assets of the firm more than sufficient to pay the debts, from the fact that he undertook to settle the debts of the firm, and that he should be held to account, and the right to contribution be denied without an account, we would be called upon to presume, in the first place, that he had such assets ; second, that he had not disbursed them, and, third, that he had a balance in his hands for which he was liable to account. This would be presuming too much against one who died several years before this suit was brought.

We are of the opinion that the matters arising out of the partnership of J. C. D. Blackburn & Co. in Sherman, Texas, after the close of the war, ought not to affect the question of the right to contribution, as between the members of the firm of Johnson, Grimes & Co. dissolved in Arkansas in 1854; that they are separate and independant matters. But if it were legitimate to consider matters growing out of the Texas partnership of J. C. D. Blackburn, Johnson & Grimes, we are unable to find that Johnson received anything from that source, belonging to the estate of Grimes, for which he has not accounted. We think there was error in the

decree of the chancellor in this case in dismissing the complaint, and that the appellants are entitled to contribution.

2. As to laches in enforcing probate judgments.

In regard to the interplea of Nicholas Gacking, it is sufficient to say he appears to have been an innocent purchaser of the forty acres of land claimed by him. Johnson's estate was entitled to contribution, as against Grimes' estate, out of this forty acres, only by right of subrogation to the equity and right of Marcellus Duval to have it sold for the satisfaction of his judgment. This judgment was rendered in 1871. Gacking bought the land in 1884, about thirteen years after the judgment was rendered.

In *Mays* v. *Rodgers*, 37 Ark. 155, it is held that "the lands and tenements of which an intestate has died siezed are, by the statutes, made assets in the hands of his adminstrator for the payment of his debts, and, in case of a deficiency of the personal estate, may, under an order of the court, be sold for that purpose. But this charge upon the real estate is not a perpetual one, which may be enforced by the administrator after any lapse of time. The heirs should not be forever deterred from making improvements on the property, or prevented from selling it, by the possibility that it may be sold for the debts of the estate. The power of the administrator must be exercised in a reasonable time, and will be lost by gross laches or unreasonable delay." See authorities cited in the case. Ten years delay was held unreasonable in that case; and so we think that thirteen years was an unreasonable delay in the case at bar, and that, when Gacking bought the forty acres, the lien of Duval's estate had been lost by lapse of time and unreasonable delay, and that Gacking's title is good against the claim of appellants for contribution. (See also *Berton* v. *Anderson*, 56 Ark. 470.)

The decree is reversed, and the cause is remanded, with instructions to sustain the interplea of Gacking, and to discharge from the attachment the forty acres of land claimed in his interplea, and to re-instate the attachment as to the other lands attached in this cause, and to enter a decree for contribution, as prayed for in the appellants' complaint.

WOOD, J., dissents on the question of contribution.